# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DELTA AIR LINES, INC.,**

                    **Plaintiff,**

**v.**                                                   **Case No:   6:15-cv-2079-Orl-31TBS**

**JOHN DOES 1-20,**

                    **Defendant.**

_____

## ORDER

This matter comes before the Court on the Motion for Leave to File Under Seal (henceforth, the "Motion to Seal") (Doc. 2) and the Motion for Temporary Restraining Order, Preliminary Injunction, Ex Parte Seizure Order, and Expedited Discovery (henceforth, the "Motion for Injunctive Relief") filed by the Plaintiff, Delta Air Lines, Inc ("Delta").   For the reasons set forth below, the Motion to Seal will be denied, while the Motion for Injunctive Relief will be granted in part.

      **I.**      **Background**

Delta contends that the Defendants are misusing Delta trademarks as part of a vacation package sales scheme.   Essentially, Delta contends that the Defendants, who purport to be offering discounted hotel stays and air fares, are using counterfeit Delta marks to mislead consumers into believing that they have a relationship with Delta that allows them to offer special rates.   In truth, Delta says, the Defendants have no such relationship, and no legal authority to use Delta's name or marks.

According to its papers, Delta first became aware of the scheme on November 25, 2014, when it received a copy of a fax advertisement from a customer. The fax (henceforth, the "First

Fax") stated that it was sent by "H.R. / Delta Sky Team" to "All Employees" and included, in the letterhead portion, Delta's name and logo, as well as the Delta-trademarked term "Skyteam."   The First Fax purported to offer "6 Days & 5 Nights all meals included for only $129 Per Adult" in "Cancun, Puerto Vallarta, Jamaica or Hawaii" as well as a "Free Bonus" of "5 Days 4 Nights Orlando" and "3 Days 2 Nights Miami".[1]

In late August, 2015, Delta began receiving complaints from customers regarding a second wave of infringing fax advertisements. These appeared facially similar to the First Fax, appearing to have been sent from "Delta SkyTeam H.R. Department" to "All Employees" and including, in the letterhead portion, Delta's name and logo.   This fax (henceforth, the "Second Fax") offered "5 days and 4 night w/all meals included for only $99 per person" in "Cancun, Hawaii, Jamaica, Bahamas, Cabo, Dominican Republic, Cuba, Puerto Rico, or Costa Rica," as well as a "Free Bonus" of "4 days 3 nights Orlando or Las Vegas."   Both faxes purported to offer 60 percent off air fare for the first 500 buyers.   However, the Second Fax included a different toll-free contact number than had been provided in the First Fax.

As Delta points out in various affidavits attached to the Motion for Injunctive Relief, the parties sending the faxes took steps apparently designed to conceal their identifies.   For example, the senders never display the telephone numbers from which the faxes originated; they set things up so that the only point of contact for potential buyers is a series of toll-free telephone numbers; the senders never identify the individual or entity selling the travel packages; they process all purchases through a travel agency that appears to be based in Mexico; and they provide all travel

---

[1] Copies of both of the faxes at issue are attached as exhibits to the Motion for Injunctive Relief, which has not yet been docketed due to the Motion to Seal.

documentation to buyers via a third-party document provider – Docusign – rather than, for example, mailing or faxing the documents to buyers.

In an effort to track down the source of the infringing documents, Delta among other things employed an investigator to purchase vacation packages via the faxes.   Delta contends that by doing so, it has traced the infringing faxes to the Defendants.   Docusign informed Delta that the documents it sent to buyers (including Delta's investigator) were provided at the behest of an entity known to it only as "Customer Service."   However, Docusign was able to identify a number of e-mail addresses and a website – bookitdiscountclub.com – that were associated with the "Customer Service" account.   According to Delta, the e-mail addresses are associated with an Orlando telephone number that was, in turn, associated with Defendant Douglas Fletcher. Fletcher is one of the principals, along with Defendant Gonzolina Sotolongo, of Defendant Full Moon Travel, Inc. ("FMT"). FMT was formed in August 2013 by Fletcher and Sotolongo, and they remained the only members and managers of FMC at the time that the First Fax was sent.[2]

On August 12, 2015, however, FMT's corporate records were amended to add Defendants Gerald Decker and Joseph Clementi as officers. FMT shares its principal place of business with that of another entity operated by Decker and Clementi – Defendant Destiney Marketing Services, Inc. Destiney's corporate records were amended in May 2015 to add Fletcher as an officer.

## II.    Legal Standard

A federal court may enter a temporary restraining order without notice to the adverse party or its attorney only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and the movant's attorney certifies in writing any efforts made to

---

[2] Defendant Twilight Travel, Inc. is also operated by Defendant Fletcher.

give notice and the reasons why it should not be required. Fed.R.Civ.P. 65(b)(1). Every temporary

restraining order issued without notice must state the date and hour it was issued; describe the

injury and state why it is irreparable; state why the order was issued without notice; and be

promptly filed in the clerk's office and entered in the record. Fed.R.Civ.P. 65(b)(2). The order

expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time

the court, for good cause, extends it for a like period or the adverse party consents to a longer

extension. The reasons for an extension must be entered in the record. Fed.R.Civ.P. 65(b)(3).

The issuance of a temporary restraining order is an extraordinary remedy. *See California v.

American Stores Company, et al.*, 492 U.S. 1301, 110 S.Ct. 1, 106 L.Ed.2d 616 (1989); *Johnson v.

U.S. Dept. of Agriculture*, 734 F.2d 774 (11 Cir. 1984). The party seeking a temporary restraining

order must demonstrate: 1) a substantial likelihood of success on the merits, 2) that irreparable

injury will be suffered if the injunction is not granted, 3) that the threatened injury outweighs the

harm the relief would inflict on the non-movant, and 4) that the entry of relief would serve the

public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226–27 (11th Cir. 2005).

### III.    Analysis

A.  Likelihood of Success on the Merits

Plaintiffs must demonstrate a likelihood of confusion to prevail on their trademark

infringement, trademark dilution, and unfair competition claims. *See Suntree Techs., Inc. v.

Ecosense Int'l, Inc.,* 693 F.3d 1338, 1346 (11th Cir. 2012) (quoting *Tana v. Dantanna's,* 611 F.3d

767, 773 (11th Cir.2010)) (trademark infringement); *Alaven Consumer Healthcare, Inc. v.

DrFloras, LLC,* 399 Fed. Appx. 545, 547 (11th Cir.2010) (trademark dilution); *Tana,* 611 F.3d at

773 (unfair competition). To determine whether the marks are likely to be confused, seven factors

are considered: "(1) the type of mark, (2) the similarity of the marks at issue, (3) the similarity of

the services the marks represent, (4) the similarity of the parties' service outlets and customers, (5) the nature and similarity of the parties' advertising media, (6) the defendant's intent, and (7) any actual confusion." *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of St. John of Jerusalem, Knights of Malta, Ecumenical Order,* 702 F.3d 1279, 1293 (11th Cir. 2012).

As to the first factor, Delta's mark is strong. The degree of protection extended to a given mark depends upon the Court determination of the mark's strength. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983). The stronger the mark, the greater the scope of protection accorded it." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC,* 605 F.3d 931, 938 (11th Cir. 2010) (quoting *Aronowitz v. Health–Chem Corp.,* 513 F.3d 1229, 1240 (11th Cir. 2008)). "Delta" is an arbitrary mark, a word or phrase that bears no relationship to the product. *See Freedom Savings & Loan Ass'n v. Way,* 757 F.2d 1176, 1182–83 n. 5 (11th Cir. 1985). Arbitrary marks are the strongest of the four categories. *See id.* On this record, the Court finds that the Delta marks are uniquely recognizable worldwide and are entitled to maximum protection.

As to the second factor, as the similarity between the existing and infringing marks increases, so too does the likelihood of confusion. *Alliance Metals, Inc. of Atlanta v. Hinely Industries, Inc.*, 222 F.3d 895, 907 (11th Cir. 2000). Where they are identical, no further analysis is required. This is such a case, as Defendants are alleged to be using the actual Delta name and the Delta marks.

The third factor is the similarity between the products or services offered by the Plaintiff and the Defendant. The nature of the competing services is likewise identical here. Delta's primary business activity involves the provision of air travel to its customers. Defendants' (alleged)

infringement involves their impersonation of Delta in relation to the sale of travel. This factor weighs in favor of finding a likelihood of confusion.

With regard to the fourth factor, the sales outlet the Defendants used on the infringing faxes (toll-free telephone numbers) is also used by Delta to allow customers to purchase tickets, receive technical assistance, and contact customer service. This factor weighs favor of a likelihood of confusion.

The fifth factor, similarity of advertising methods, is not present in this case. It is not clear how the Defendants advertise their services aside from the infringing faxes. Delta uses many different mediums to advertise, but it is unlikely that fax offers are one of them. This factor is neutral.

If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity. *See John H. Harland Co.,* 711 F.2d at 977. Delta has shown that Defendants purport to be authorized by Delta in the infringing facsimiles to trade upon the credibility and goodwill inherent in the Delta name and marks. The facsimiles adopt the Delta marks and advertise promotions and packages that are falsely affiliated with Delta. While it is established that the facsimiles were sent with the intent to capitalize on Delta's name, there is some question as to whether the Defendants named in this lawsuit are the actual infringers. However, the Court finds that Delta has provided sufficient evidence of a connection between Defendants and the infringing facsimiles to proceed. This factor weighs in favor of a likelihood of confusion.

Plaintiff alleges that actual confusion has occurred among Delta customers. However, it has failed to provide evidence on this factor. As such, this factor is neutral.

Evaluating the overall balance of the above factors, Delta has demonstrated a likelihood of success on the merits of its claims.

B.   Irreparable Injury

"Once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, a presumption of irreparable harm arises." *Fantasia Distrib., 2014 U.S. Dist. LEXIS 19884, at \*3–4, 2014 WL 673163* (citation omitted); *see also BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc., 792 F.Supp. 775, 784 (M.D.Fla. 1991)* ("The law is well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Federal Rule of Civil Procedure 65."). Because this Court has found that Plaintiff is likely to prevail on the merits of its trademark infringement claims by establishing a likelihood of confusion, the Court now also finds that Plaintiff has established that the injury threatening it is of an irreparable nature. Even if irreparable injury is not presumed, Plaintiff has shown that it will suffer irreparable injury to its goodwill and reputation due to its association with the "fax-spamming" travel offers sent by the Defendants, absent entry of a temporary restraining order.

C.   Substantial Harm

According to Delta, no Defendant is authorized to use the Delta marks.   As such, the Defendants will not suffer substantial harm as a result of the Court granting Plaintiff's Motion for a Temporary Restraining Order. Defendants will be able to continue operating their business, as the Order will only halt Defendants' use of the Delta name and Delta marks.

D.   Public Interest

Delta has adequately demonstrated that any use of Delta's marks will likely cause confusion among consumers. Because "the public interest is served by preventing consumer

- 7 -

confusion in the marketplace[,]" *Davidoff & Cie, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1304

(11th Cir. 2001), a temporary restraining order enjoining Defendants' use of the Delta Marks is

justified.

Based on Plaintiff's Motion for Temporary Restraining Order, and documents filed in

support thereof, the Court finds the four-part test for injunctive relief has been satisfied and a

temporary restraining order should be issued. Notice is unnecessary as Plaintiff has shown that

immediate and irreparable damage will result to Plaintiff before the adverse party can be heard in

opposition.

E.      Seizure Order

In addition to a temporary restraining order, Delta seeks the issuance of an order permitting

the seizure of "all infringing materials, including any original, unsent, or master facsimiles in the

possession, custody, or control of Defendants, along with any documents showing or tending to

show the identities of other infringers and the nature and extent of the infringement by any

Defendant."   (Motion for Injunctive Relief at 15).   Section 34 of the Lanham Act, codified at 15

U.S.C. § 1116, authorizes the entry of such orders once certain conditions have been met.   The

relevant subsection, 15. U.S.C. § 1116(d), provides in part that in a trademark infringement case

involving the use of a counterfeit mark, the court may enter an *ex parte* order providing for "the

seizure of goods and counterfeit marks involved in such violation and the means of making such

marks, and records documenting the manufacture, sale, or receipt of things involved in such

violation."   The court cannot consider such an *ex parte* motion unless the movant has provided

reasonable notice to the United States Attorney's Office (which Delta asserts it has done).   The

application for such an order must be based on affidavits or verified complaints establishing facts

sufficient to support the findings of fact and conclusions of law required for such order and

contain the additional information required by 15 U.S.C. § 1116(d)(5).[3]  And the person seeking entry of such an order must provide security "determined adequate by the court for the payment of such damages as any person may be entitled to recover as a result of a wrongful seizure or wrongful attempted seizure."

However, the court may not enter such an order unless it find that it clearly appears from specific facts that

> **(i)** an order other than an ex parte seizure order is not adequate to achieve the purposes of [15 U.S.C. § 1114[4]];
>
> **(ii)** the applicant has not publicized the requested seizure;
>
> **(iii)** the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;
>
> **(iv)** an immediate and irreparable injury will occur if such seizure is not ordered;

_____

[3] That section provides that such a seizure order shall include:

> **(A)** the findings of fact and conclusions of law required for the order;
>
> **(B)** a particular description of the matter to be seized, and a description of each place at which such matter is to be seized;
>
> **(C)** the time period, which shall end not later than seven days after the date on which such order is issued, during which the seizure is to be made;
>
> **(D)** the amount of security required to be provided under this subsection; and
>
> **(E)** a date for the hearing required under paragraph (10) of this subsection.

15 U.S.C. §1116(d)(5).

[4] 15 U.S.C. § 1114 provides remedies for victims of infringement.

(v) the matter to be seized will be located at the place identified in the application;

(vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

(vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

15 U.S.C. § 1116(d)(4).

On this record, Delta has not made the necessary showing to justify issuance of a seizure order.   As noted above, the link between the infringing faxes and a number of the Defendants is somewhat tenuous; there has been no showing that the faxes containing the counterfeit marks originated from the computers or fax machines of these various defendants, or that a search of the premises of these defendants is likely to turn up copies of Delta's marks or records of their use. While the Court finds that the connection is strong enough to warrant entry of a temporary restraining order forbidding any infringement, it is not strong enough to justify the seizure, for example, of these defendants' hard drives to search for copies of the offending faxes.   In addition, Delta has not shown that the use of the infringing marks is ongoing, such that Delta will suffer further irreparable injury unless such a seizure is permitted.   According to the affidavit submitted by Delta's Deputy General Counsel, Edward Arnold, the last known date on which an infringing fax was sent was September 1, 2015.   (Arnold Affidavit at 7).   And the Plaintiff has not shown that the Defendants are likely to "destroy, move, hide, or otherwise make … inaccessible to the court" any infringing material.   (Of course, the Defendants are bound by the customary prohibitions on spoliation of evidence.   *See, e.g.*, *Swofford v. Eslinger*, 671 F.Supp.2d 1274 (M.D.Fla. 2009) (detailing various potential sanctions for spoliation).

Accordingly, the Court will deny the motion insofar as it seeks a seizure order.

F.      Motion to Seal

To avoid tipping its hand in regard to the seizure, Delta sought to have the Motion for Injunctive Relief and its amended complaint (in which it identifies the Defendants) filed under seal.   In light of the Court's denial of the request for a seizure order, such sealing is not necessary, and the Motion to Seal will therefore be denied.

In consideration of the foregoing, it is hereby

**ORDERED** that

The Motion for Temporary Restraining Order, Preliminary Injunction, Ex Parte Seizure Order, and Expedited Discovery is **GRANTED IN PART AND DENIED IN PART**, as follows:

1.      The Defendants, their agents, employees, confederates, attorneys, and any persons acting in concert or participation with them, or having knowledge of this order by personal service or otherwise, are hereby **TEMPORARILY RESTRAINED** from

(a) using counterfeits or infringing versions of Plaintiff's marks in connection with the creation, importation, exportation, distribution, marketing, advertising, offer for sale, sale, and/or public display of marketing materials; and

(b) moving, destroying, or otherwise disposing of any products, digital storage media, or other items, merchandise or documents bearing, relating to, or used for reproducing the Plaintiff's marks or any reproduction, counterfeit, copy, or colorable imitation thereof; and

(c) removing, destroying, otherwise disposing of any computer tapes or disks, business records, or documents relating in any way to the manufacture, acquisition, purchase, distribution, sale, public display, or public use of any goods or other materials

bearing Plaintiff's marks or any reproduction, counterfeit, copy or colorable imitation thereof.

The temporary restraining order will expire on December 28, 2015, unless extended for good cause shown.

2.      The Plaintiff shall post security in the amount of $10,000 with the Clerk no later than December 16, 2015 and shall promptly serve its motions, the amended complaint, and this order on the Defendants no later than Thursday, December 17, 2015.

3.      The Plaintiff's request for a seizure order is **DENIED**.

4.      The Defendants are **ORDERED** to show cause by written response, filed on or before December 23, 2015, why a preliminary injunction should not issue, precluding any future use of or infringement upon the Delta name and Marks.   A hearing on the show cause order will be set by separate order.

5.      The Court will defer ruling on the request for expedited discovery.   The parties will be expected to address the issue at the hearing on the show cause order.   Any defendant wishing to file a written response to the Plaintiff's request for expedited discovery must do so by December 24, 2015.

6.      Delta's request for attorney's fees will be **DENIED WITHOUT PREJUDICE**, subject to being re-raised, if appropriate, at the conclusion of these proceedings.

7.      The Motion for Leave to File Under Seal (Doc. 2) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida at 12:10 p.m. on December 14, 2015.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE