UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DELTA AIR LINES, INC.,

Plaintiff,

v. Case No: 6:15-cv-2079-Orl-31TBS

GONZOLINA SOTOLONGO, DOUGLAS MARK FLETCHER, JOSEPH CHIMENTI, GERALD DECKER, FULL MOON TRAVEL, INC., TWILIGHT TRAVEL, INC., DESTINEY MARKETING SERVICES, INC., JOHN DOES 1-10, TROPICAL GETAWAYS, LLC, CHAYLA ARCHAMBAULT, VIP TRAVEL SERVICES, LLC and DANTE SPITALIERI,

Defendants.

---

## REPORT AND RECOMMENDATION

Pending before the Court are Defendant's Motion for Default Judgment (Doc 103) and Defendant's Amended Motion for Default Judgment (Doc. 104). Upon consideration, I respectfully recommend that the motion be **DENIED as moot**, and the amended motion be **GRANTED in part and DENIED in part**, as set forth herein.

### Background

This case involves the claims of Plaintiff Delta Air Lines, Inc. ("Delta" or "Plaintiff") that Defendants Douglas Mark Fletcher ("Fletcher"), Full Moon Travel, Inc. ("Full Moon"), Twilight Travel, Inc. ("Twilight"), and Destiney Marketing Services, Inc. ("Destiney") (Full Moon, Twilight, and Destiney collectively, the "Fletcher Entities") have violated the Lanham Act (15 U.S.C. § 1051 et seq.) and intentionally and in bad faith committed other actionable misconduct.

The lawsuit commenced on a John Doe complaint (Doc. 1), as Delta sought to have its motion for injunctive relief and its amended complaint (in which it identifies the Defendants) filed under seal (Doc. 2). The motion to seal was denied (Doc. 10) and Defendants Full Moon, Twilight, and Destiney were served with Delta's First Amended Complaint (Doc. 14) and the Preliminary Injunction Motion (Doc. 9) (Docs. 42-47). Defendant Fletcher was personally served with those same pleadings on February 16, 2016 (Doc. 71). Fletcher and the Fletcher Entities failed to appear or respond and defaults were entered against them (Doc. 67-70 and 80). Following entry of the defaults, Delta obtained leave and, on April 21, 2016, filed a Second Amended Complaint (Doc. 83). This pleading reiterates the claims against Fletcher and the Fletcher Entities and added new defendants. Fletcher and the Fletcher Entities also failed to appear or respond to this complaint. The instant motions followed.

Although the operative complaint purports to allege twelve counts[1] arising from misappropriation of Delta's intellectual property, the present motion does not separately discuss each individual count but addresses the alleged misconduct as a whole. Delta seeks to recover statutory damages pursuant to the Lanham Act in the amount of $6 million (3 marks x $2 million/mark); attorneys' fees in the amount of $164,840.00 and $41,642.42 for expenses (including local counsel fees); punitive damages in the suggested amount of double the statutory damages and attorney fees; and a permanent

[1] The counts include: federal trademark infringement pursuant to 15 U.S.C. § 1114 (Count I); federal trademark counterfeiting pursuant to 15 U.S.C. §§ 1114, 1116(d), and 1117 (Count II); federal unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) (Count III); dilution of a famous mark in violation of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. §1125(c) (Count IV); tarnishment of a famous mark, a special form of dilution within the meaning of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. § 1125(c) (Count V); contributory infringement pursuant to 15 U.S.C. § 1114 (Count VI) Florida common law trademark infringement (Count VII); Florida common law trademark dilution (Count VIII);Florida common law unfair competition (Count IX); deceptive trade practices under Fla. Stat. §501.204, et seq (Count X); unjust enrichment (Count XI); and punitive damages pursuant to Fla. Stat. Ann. § 768.72(2) (Count XII).

injunction. The amended motion is supported by the Declaration of attorney Kelly O. Wallace (Doc. 104-2); excerpts from a transcript of the December 22, 2015 recorded statement of Douglas Mark Fletcher (Doc. 104-3); excerpts from the June 6, 2016 deposition of Gerald Decker (Doc. 104-5); and orders in other cases, attached to the amended motion as exhibits (Doc. 104-1). Delta has provided a proposed Order of Permanent Injunction (Doc. 104-13) and proposed Findings of Fact, Conclusions of Law, and Judgment (Doc. 104-14).

## Discussion

Legal Standard

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir.1987). Nonetheless, a court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

The United States Supreme Court has noted the difference between well-pleaded facts and conclusory allegations. In Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, but it demands more than "an unadorned, the-defendant-

unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the plaintiff is entitled to relief.'" Id. at 679 (quoting FED. R. CIV. P. 8(a)(2)). This analysis is equally applicable to a motion for default judgment. See De Lotta v. Dezenzo's Italian Restaurant, Inc., No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, *5 (M.D. Fla. November 24, 2009).

Once liability is established, the Court turns to the terms of the judgment. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. FED. R. CIV. P. 55(b)(1)-(2). Pursuant to Rule 55(b)(2), the Court "may conduct hearings or make referrals-preserving any federal statutory right to a jury trial-when, to enter or effectuate judgment, it needs to: A) conduct an accounting; B) determine the amount of damages; C) establish the truth of any allegation by evidence; or D) investigate any other matter." Thus, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief.

Findings of Fact

The operative complaint contains numerous well-pled allegations that are summarized in the District Court's Temporary Restraining Order (Doc. 10) and admitted by the default of these Defendants.

Delta, one of the world's largest commercial airlines, offers and sells its goods and services under and in conjunction with the DELTA-related trademark and service mark registrations set forth in the Second Amended Complaint (Doc. 83, at ¶¶ 27, 28-30). Through Delta's long and successful efforts, its DELTA Mark (Registration No. 0654915), its WIDGET LOGO Mark (Registration No. 2556013), its SKYMILES Mark (Registration No. 1968255) (collectively the "Delta Marks"), and Delta's other registered marks have earned extensive goodwill, favorable recognition, and a worldwide reputation. The DELTA, WIDGET LOGO, and SKYMILES Marks are famous marks, instantly recognizable as sources of goodwill, high reputation, and high-quality goods and services. (Id. at ¶¶ 28-39). Delta also offers and sells its goods and services under and in conjunction with the SKYTEAM name and logo (U.S. Registration Nos. 2750730 and 2684264). The registrations issued on the Principal Register are in full force and effect and the Delta Marks have long since acquired "incontestable" registration status. (Id. at ¶ 31).

Fletcher is a resident of Orlando, Florida (Id. at ¶ 10) and is the owner, officer, manager, and/or other such principal in a number of business entities that are also Defendants, including:

a) Full Moon Travel, Inc. d/b/a First Travel Services d/b/a Tours R Us Special Vacations d/b/a BookItDiscountClub.com ("Full Moon") (Id. at ¶¶ 13-14);

b) Twilight Travel, Inc. ("Twilight") (Id. at ¶ 15); and

c) Destiney Marketing Services, Inc. ("Destiney") (Id. at ¶ 16). Fletcher operates the Fletcher Entities from a single office, and uses the Fletcher Entities identities interchangeably, to obfuscate and otherwise conceal the actual identities of the persons and/or entities responsible for the conduct complained of by Delta. (Id. at ¶ 43). Fletcher

and the Fletcher Entities are inter-related alter-egos and co-conspirators of one another. (Id. at ¶ 44).

Fletcher and the Fletcher Entities created and sent facsimile transmissions ("faxes") purporting to be from "H.R." (a common abbreviation for the "human resources" department) and "Delta Sky Team." The faxes prominently displayed the DELTA, WIDGET LOGO, and SKYTEAM marks on the top of the facsimiles. Fletcher and the Fletcher Entities intentionally created the faxes to show the Delta Marks in an identical manner as Delta does on its website and other official marketing pieces. (Id. at ¶ 46). The faxes state that they are directed to "All Employees" and purported to advertise "vacation packages" to Cancun, Puerto Vallarta, Jamaica, or Hawaii. The faxes also stated that the "First 500 Receive Up to 60% off Flight." The recipients were directed to call a toll-free "Booking and Reservations" number to purchase this special deal. (Id. at ¶ 48). Despite the use of Delta Marks, Delta has no established business relationship with any Defendant (Id. ¶51).

Fletcher and the Fletcher Entities sent these faxes to recipients throughout the United States. Delta received complaints and copies of the Defendants' faxes from third parties throughout the United States. (Id. at ¶ 49).

Fletcher and the Fletcher Entities receive the incoming calls from recipient/victims of the counterfeit faxes, and pose as partners of Delta with the prospective customers. (Id. at ¶ 53). Fletcher and the Fletcher Entities use this fictitious relationship with Delta, as well as Delta's name and reputation to induce potential customers to purchase "vacation packages." (Id. at ¶ 54). The facsimiles are not authorized, endorsed by, or sent with the permission of Delta or the "Delta Sky Team." (Id. at ¶52).

Fletcher and the Fletcher Entities have created, transmitted, and otherwise used and profited from correspondence and other marketing materials that bear counterfeit versions of the Delta Marks and Skyteam Marks and expressly and falsely purport to have been sent by, on behalf of, or with the approval of Delta. (Id. at ¶¶ 45-55).

In addition to admission of these well pled allegations, the Court takes notice of Delta's prior showing with respect to the Temporary Restraining Order and Preliminary Injunction which established that, under the control and direction of Fletcher, the Fletcher Entities have carried out this fraudulent and bad faith impersonation of Delta to further their enterprise of selling "vacation packages" which are actually nothing more than high-pressure sales conferences. (See Doc. 9, Plaintiff Delta Air Lines, Inc.'s Motion for Temporary Restraining Order, Preliminary Injunction, Ex Parte Seizure Order, and Expedited Discovery- at pp. 3-6). The nature, scope, and duration of their illegal activities render Fletcher and the Fletcher Entities particularly culpable. (Id.) They have been involved in this same scheme, using nearly-identical faxes bearing the same counterfeit Delta Marks and Skyteam Marks, from at least November 2014 to and through August 2015. Delta estimates that these Defendants have sent thousands, if not tens or hundreds of thousands, of these bogus and counterfeit faxes (Id.).

Liability

Although Delta has alleged numerous causes of action, the motion appears to rest solely on the Lanham Act which expressly prohibits the unauthorized use of a registered trademark in connection with "the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a). As Delta correctly observed in its uncontested prior filings with respect to the entry of the Temporary Restraining Order and Preliminary Injunction, trademarks are protected by federal law against infringement by use of

identical (counterfeit) or colorable imitations of the mark which are "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). The Eleventh Circuit has developed a seven-factor test for determining whether there is a likelihood of confusion: (1) the strength of the plaintiffs mark; (2) the similarity between the plaintiffs mark and the infringing mark; (3) the similarity between the products or services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of the advertising methods; (6) the defendant's intent; and (7) whether actual confusion has occurred. Alliance Metals, Inc. of Atlanta v. Hinely Industries, Inc., 222 F.3d 895 (11th Cir. 2000). Consideration of these factors in view of the uncontested facts leads to the conclusion that these Defendants violated the Lanham Act in their misappropriation of Delta's marks. See Doc. 10.

Damages

*Statutory Damages*

Delta seeks an award of statutory damages under the Act. The applicable provision states:

> (c) Statutory damages for use of counterfeit marks
>
> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of-
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type

> of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C.A. § 1117(c).

The totality of the unrebutted allegations and evidence support a finding that the infringement here was comprehensive, knowing and intentional. Moreover, the harm that resulted was not insignificant. No other conclusion can be drawn but that Fletcher, individually and through these entities, knowingly sought to trade on the recognition and goodwill of the Delta Marks as the bedrock of his business. In view of the willfulness, breadth and duration of the misconduct, I recommend an award of $2,000,000.00 per mark, for a total of $6,000,000.00 (three marks) in statutory damages.

*Attorneys' Fees and Expenses*

The Lanham Act provides for the award of reasonable attorney's fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). The Eleventh Circuit has held that exceptional cases are those where the infringing party acts in a "malicious, fraudulent, deliberate, or willful manner." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1205 (11th Cir. 2001) (reversing fee award that lacked sufficient factual findings); Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 168 (11th Cir. 1994) (quoting 1974 U.S.C.C.A.N. 7132, 7133). On April 29, 2014, however, the Supreme Court interpreted identical statutory language in the patent context, and found that the word "exceptional" should be interpreted in accordance with its ordinary meaning:

> We hold, then, that an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances

Octane Fitness, LLC v. ICON Health & Fitness, Inc., -U.S.-, 134 S.Ct. 1749, 1756, 188 L.Ed 2d 816 (2014). Although the Eleventh Circuit has yet to address the applicability of Octane in the Lanham Act context, in view of the statements made by Fletcher, the uncontested allegations, Defendants efforts to shield their identities, and the sheer scope of the misconduct at issue here, this case is exceptional under either standard and fees are warranted.

In calculating an appropriate amount, federal courts apply the "lodestar" method, multiplying a reasonable hourly rate by a reasonable number of hours expended. See Blum v. Stenson, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1994); Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299 (citing Blum, 465 U.S. at 895-96 n. 11).

In determining what is a reasonable, the Court is mindful of the factors identified in Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974),[2] namely: (1) time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

[2] Johnson was overruled on other grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman, 836 F. 2d at 1303. An applicant may meet his or her burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. Norman, 836 F.2d at 1299. In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. Id. at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Id. at 434.

Delta seeks $164,840.00 in attorneys' fees, $30,631.92 in costs and expenses, and $11,010.50 in fees for local counsel. Delta's presentation of this request leaves much to be desired. Delta has presented the Declaration of Kelly O. Wallace, outside counsel for Delta, and has attached invoices, which purport to summarize the time expended and tasks performed (Doc. 104-2). While Delta does not provide the total number of hours billed by each timekeeper, according to the Declaration, hours worked by Delta's outside counsel at Wellborn & Wallace, LLC – Paul F. ("Pete") Wellborn III ("Wellborn"), Kelly O. Wallace ("Wallace"), and Jamie P. Woodard ("Woodard") – are billed at Delta's actual rate of $250/hour (Doc. 104-2 at ¶12). Dividing the total amount claimed ($164,840.00) by the hourly rate of $250.00, yields 659.36 total hours expended by outside counsel. The Court now turns to whether the hourly rate and the amount of hours spent by outside counsel is reasonable.

Delta has provided biographical information for Wellborn and Wallace (Doc. 104-2 at 10-12) but has not provided information for Woodard. Nonetheless, at $250 per hour,

the Court has no difficulty concluding that this rate is reasonable in this legal community for similar work, even if performed by relatively inexperienced counsel.

As for the amount of hours, Delta does not address the Johnson factors, leaving the Court to review the filing and glean what it can from the limited showing made. By any measure, 660 hours is an extraordinary amount of time for prosecution of an infringement case against defaulted defendants. This is not a run of the mill case, however. As reflected in the Declaration and the papers filed, the fraudulent and infringing "travel package" scheme designed and executed by Defendants involved a variety of overlapping business roles and functions, and Fletcher and the Fletcher Entities took extreme steps to shield their individual identities and involvement from discovery. To the extent this obfuscation led to a greater than normal amount of investigation on counsel's part, such is not unreasonable. Considering the first three Johnson factors, the discounted rate, the amount involved and results obtained, I conclude that the $164,840.00 in attorneys' fees sought is reasonable and should be awarded.

Delta has also engaged and retained local counsel, John H. Rains III, P.A. and attorneys John H. Rains, III and Elizabeth Hill (Doc. 104-2 at ¶14). Neither hourly rates for local counsel nor the total amount of hours they expended are set forth in this Declaration, nor can the Court discern the same from the invoices.[3] Moreover, there is no explanation as to the tasks local counsel performed. Absent this information, the Court cannot perform the required analysis. As Delta has not met its burden to establish entitlement to these fees, I find that they should not be awarded.[4]

---

[3] The invoices do not claim an hourly rate for local counsel, but lump time together in "1 unit." See, e.g., Doc. 104-2 at 31, claiming $213.00 for John H. Rains, III; pg. 33, claiming $319.50; pg. 35, claiming $497.00.

[4] Further, the award for outside counsel's services recommended here is generous enough to subsume all reasonable attorney fees in this matter.

Although Delta claims $30,631.92 in "out-of-pocket costs" in relation to its investigation of the illegal enterprise of Fletcher and the Fletcher Entities, it does not identify exactly what these costs are and there is no support offered for their allowance. I recommend that they be disallowed, subject to the filing, in the usual course, of a Bill of Costs under 28 U.S.C. §1920 and Rule 54, at the completion of the litigation.

*Punitive Damages*

Delta asks for an award of punitive damages, citing five cases from the Northern District of Georgia. The basis for such an award is not clear from Delta's brief (or the cases cited).[5] To the extent the Georgia cases appear to rely on Georgia law, they are not shown to be applicable here. On this showing, I recommend the Court not award punitive damages.

Injunction

The Lanham Act permits the issuance of permanent injunctions to prevent future violations. 15 U.S.C. § 1116. Courts have the authority to grant permanent injunctions under the Act, provided that the plaintiff demonstrates that (1) it has suffered an irreparable injury; (2) the remedies available at law are inadequate to compensate for the injury; (3) a remedy in equity is warranted, considering the balance of hardships between the plaintiff and defendant; and (4) the public interest would not be disserved by a permanent injunction. Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008).

Irreparable injury has been determined to include "loss of control of reputation, loss of trade, and loss of goodwill." Ferrellgas Partners, L.P. v. Barrow, 143 Fed. Appx. 180,

[5] Considering the six figure attorney's fee claimed here, the lack of sufficient briefing on this issue is puzzling.

190 (11th Cir. 2005) (quoting Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998)). Delta need not introduce evidence of threats of future harm when the Defendant has willfully infringed a plaintiff's trademarks. See Polo Fashions, Inc. v. Dick Bruhm, Inc., 793 F.2d 1132, 1135-36 (9th Cir. 1986); Vuitton Et Fils, S.A. v. Crown Handbags, 492 F. Supp. 1071, 1077 (S.D. N.Y. 1979) ("mere possibility of infringement is sufficient to warrant a permanent injunction"), *aff'd,* 622 F.2d 577 (2d Cir. 1980).

I find that Delta has suffered irreparable injury in the loss of control regarding the use of its Marks by Fletcher and the Fletcher Entities. Moreover, the public interest will not be disserved by the entry of the requested permanent injunction. The injunction will protect the Delta trademarks that enable the consuming public to make informed purchasing decisions. Further, the lack of cooperation in this suit strongly supports the need for an injunction. See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.") As the District Court has previously recognized in granting the Temporary Restraining Order and the Preliminary Injunction, such relief is appropriate in this context on the showing made by Delta. Now, pursuant to 15 U.S.C. § 1116, it is recommended that the District Court permanently enjoin Defendants from continuing to infringe any of Delta's trademarks. The language suggested by Delta in its Proposed Order (Doc. 104-13) is acceptable for this purpose.

**Recommendation**

Upon consideration of the foregoing, I respectfully recommend that:

1. The Motion (Doc. 103) be **DENIED as moot**;

2. The Amended Motion (Doc. 104) be **GRANTED in part**, to the extent it seeks a default judgment against Fletcher and the Fletcher Entities in the amount of $6,000,000.00 in statutory damages and $164,840.00 in attorneys' fees, and entry of a Permanent Injunction; and

3. The Amended Motion (Doc. 104) be **DENIED in part**, to the extent it seeks an award of punitive damages, additional fees for local counsel, or costs other than those recoverable under 28 U.S.C. §1920.

**Notice to Parties**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on February 24, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record
Any Unrepresented Parties